IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ELLIS-HALL CONSULTANTS, LLC; a Utah limited liability company; and ANTHONY HALL, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> GEORGE B. HOFMANN IV, an individual; PARSONS KINGHORN HARRIS NKA COHNE KINGHORN, P.C., a Utah professional corporation; MATTHEW M. BOLEY, an individual; KIMBERLEY L. HANSEN, an individual; GARY E. JUBBER, an individual; and DAVID R. HAGUE, an individual, FABIAN & CLENDENIN NKA FABIAN VANCOTT, P.C., a Utah professional corporation, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 2:15-cv-00913-DB <br><br> District Judge Dee Benson |

Before the court is Plaintiffs' Motion to Alter or Amend the Court's January 18, 2017, Order. (Dkt. No. 70.) The court has reviewed the briefing of the parties, other relevant filings, and applicable law. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f). Pursuant to a recent Tenth Circuit decision, *In re Renewable Energy Dev. Corp.*, 792 F.3d 1274 (10th Cir. 2015) ("*In re REDCO*"), brought to the court's attention in the reply briefing submitted by Fabian & Clendenin, David R. Hague, and Gary E. Jubber (the "Fabian Defendants") (Dkt. No. 36), the court reconsiders its previous ruling and denies Defendants' motions to dismiss and for judgment on the pleadings on *Barton* doctrine grounds.

Plaintiffs' Claims

In their Amended Complaint, Plaintiffs allege five causes of action: 1) Breach of Fiduciary Duty, 2) Malpractice, 3) Aiding and Abetting Breach of Fiduciary Duty, 4) Breach of Contract, and 5) Unjust Enrichment/ Disgorgement. (Dkt. No. 16 at ¶ 264-316.) Plaintiffs rely on actions taken by the bankruptcy trustee of the REDCO estate, Defendant George Hofmann ("Hofmann"), and the actions of the counsel he appointed as special counsel to the bankruptcy trustee, the Fabian Defendants, to form a basis for their claims. (*Id.*at ¶ 70-263.) Plaintiffs assert that Hofmann was retained as their attorney[1] prior to his appointment as bankruptcy trustee of the REDCO estate and during his tenure as trustee. (*Id.*at ¶ 16-69.) Plaintiffs then allege that Hofmann breached his duties to Plaintiffs by failing to disclose conflicts, misappropriating confidential information, and failing to act in Plaintiffs' best interests, as their attorney. (*Id.*at ¶ 70-263.)

Plaintiffs place particular emphasis on a series of alleged representations and transactions beginning in January 2012, in which Hofmann informed Plaintiffs of several REDCO estate assets, including eighteen option lease agreements, for development of a wind energy project in San Juan County, Utah. (*Id.*at ¶ 96-97.) Hofmann told Plaintiffs that some of the options were "bad" (that is, the debtor, REDCO had failed to make periodic payments or take other steps necessary to keep the options valid) and some were "good." (*Id.* at ¶ 98, 103.) Hofmann advised Plaintiffs to attempt to sign the "bad" option landowners to new options. (*Id.*at ¶ 100.)

Hofmann further advised Plaintiffs to travel to Monticello, Utah, to examine the "good" options. (*Id.*at ¶ 105-106.) Plaintiffs did, and they provided information to Hofmann regarding

---

[1] Plaintiffs also assert that Hofmann and Fabian were retained by Ms. Ceruti, a business associate of Plaintiffs, on various current and former matters.

their findings. (*Id.*) Hofmann then used the information provided by Plaintiffs against Plaintiffs in the bankruptcy bidding proceedings. (*Id.*)

On January 23, 2012, Hofmann offered to sell both the "good" and "bad" option leases to Plaintiffs for $3,000.00. (*Id.* at ¶ 108.) Plaintiffs accepted and wrote a check for the purchase price. (*Id.* at ¶ 113.) However, Hofmann had already sold the "good" options on January 10, 2012, to Sustainable Power Group ("SPG"), a company allegedly affiliated with an owner and debtor of REDCO. (*Id.* at ¶ 125.) Unbeknownst to Plaintiffs, the sale was approved by the bankruptcy court in late January 2012. (*Id.* at ¶ 141-149.) Hofmann failed to return Plaintiffs' purchase money until March 16, 2012. (*Id.* at ¶ .) Unknown to Hofmann at the time, Plaintiffs later purchased the "good" options directly from SPG. (*Id.* at ¶ 153.) When SPG realized the full value of the options, SPG attempted to get the assets back. (*Id.* at ¶ 161.)

When Plaintiffs refused to return the assets to SPG, Hofmann demanded that Plaintiffs return the "good" options to the estate and extorted Plaintiffs by threatening to sue them for violating the automatic stay if they did not. (*Id.* at ¶ 164-165, 175.) When Plaintiffs refused, Hofmann sent a cease and desist letter to Plaintiffs, then hired the Fabian Defendants to act as special counsel for the trustee to bring suit against Plaintiffs for violation of the automatic stay. (*Id.* at ¶ .) Plaintiffs alleged that both Hofmann and Fabian had conflicts arising from their former or current representations of Plaintiffs and Ms. Ceruti. (*Id.* at ¶ 181, 189-191.) Nevertheless, on April 4, 2012, the Fabian Defendants, on behalf of Hofmann, moved the bankruptcy court for an Order to Show Cause why Plaintiffs should not be held in contempt for violations of the automatic stay. (*Id.* at ¶ 194.) The Order to Show Cause issued following a hearing before the bankruptcy court on April 12, 2012. (*Id.* at ¶ 207.)

Plaintiffs seek only money damages from Defendants in their prayer for relief, and do not request any form of injunctive relief with respect to bankruptcy estate assets. (*Id.* at ¶ 275, 285, 296, 305, 312-316.) Plaintiffs were not parties to the REDCO bankruptcy proceedings; that is, Plaintiffs have never been either debtors or creditors to the bankruptcy, and were only involved in the bankruptcy proceedings because of their preexisting relationship with Hofmann. (*Id.* at ¶ 1-2, 16-69.)

## In re REDCO

In addition to the facts alleged by Plaintiffs, the facts and reasoning of a recent Tenth Circuit decision, *In re REDCO*, must be considered for the appropriate disposition of the motion now before the court.[2] 792 F.3d 1274. *In re REDCO* involved almost identical parties to those involved here,[3] and analyzed claims virtually identical to those in this case. In *In re REDCO*, Plaintiffs and Ms. Ceruti alleged that Hofmann "breached professional duties due them because of conflicting obligations he owed to the bankruptcy estate." *Id.* at 1276. The court determined that the plaintiffs, pursuant to an analysis of the public rights doctrine and applicable law, were entitled to a jury trial before an Article III judge on their claims. *Id.* at 1277-1284. For the court, Judge Gorsuch explained:

> True, the plaintiffs claim they once enjoyed an attorney-client relationship with a former bankruptcy trustee. True, they now allege the former trustee breached professional duties due them because of conflicting obligations he owed the bankruptcy estate. But the plaintiffs seek recovery only under state law and none of their claims will be necessarily resolved in the bankruptcy claims allowance

---

[2] Although the parties cited *In re REDCO* in passing in their original briefing, the parties failed to alert the court to the importance of *In re REDCO*, given the virtually identical parties and claims involved, as well as the related nature of the *Stern* inquiry to the *Barton* inquiry here.

[3] *In re REDCO* involves the same Plaintiffs as those here, and some additional Plaintiffs, such as Ms. Ceruti and her company, Summit Wind Power, LLC. It also involves the same defendants, except that it does not include the Fabian Defendants.

4

> process. And to know that much is to know this case cannot be resolved in bankruptcy court.

*Id.* at 1276-77. This court views the facts and law of this case in light of the Tenth Circuit's recent ruling in this nearly identical case.

## Barton Doctrine

In *Barton v. Barbour*, the United States Supreme Court held that an action against a receiver in her capacity as receiver may not be "prosecuted by suit without leave of the [appointing] court." 104 U.S. 126, 131 (1881). The Court reasoned that the absence of such a rule would "allow the charges and expenses of the administration of a trust property in the hands of a court of equity to be controlled by other courts, at the instance of impatient suitors, without regard to the equities of other claimants, and to permit the trust property to be wasted in the costs of unnecessary litigation." *Id.* at 130.

In *Satterfield v. Malloy*, the Tenth Circuit applied the same reasoning to extend the *Barton* doctrine to bankruptcy cases. 700 F. 3d 1231 (10th Cir. 2012). The court noted that "like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. The court recognized an ultra vires exception to the *Barton* doctrine, which excludes from the purview of the *Barton* doctrine actions "taken outside the scope of [the bankruptcy trustee's] authority," particularly where the actions were taken against parties not involved in the bankruptcy proceedings. *Id*. at 1235-36. However, the court adopted a "relatively broad interpretation of the *Barton* doctrine when considering claims by plaintiffs who are involved in the underlying bankruptcy proceeding" and counseled that "[r]egardless of the manner in which a plaintiff denominates his claim, courts applying the *Barton* doctrine must

look to the substantive allegation to determine whether a claim is related to the trustee's bankruptcy duties." *Id.* "The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) (citations omitted).

Upon reconsideration, the court determines that, in light of *In re REDCO*, Plaintiffs' claims are not subject to *Barton* dismissal at this stage. Although Plaintiffs' substantive allegations relate to conduct performed by Hofmann during his tenure as trustee, Plaintiffs' claims are all based on state law and stem from an alleged pre-existing relationship they had with Hofmann as their attorney. Unlike the plaintiff in *Satterfield*, who was the debtor in the bankruptcy proceedings, Plaintiffs were not parties to the REDCO Bankruptcy proceedings. And unlike the *Satterfield* plaintiff who sought to reverse alleged self-dealing transactions performed by the bankruptcy trustee in his official duties, Plaintiffs here claim not to seek any form of relief that would have any effect on the estate administered in bankruptcy. Rather, Plaintiffs here, similarly to the plaintiffs in *In re REDCO*, seek only money damages from Defendants for their alleged breaches of fiduciary duty and negligence. Accordingly, the court cannot find at this stage that the resolution of Plaintiffs' claims will have any conceivable effect on the bankruptcy estate.

This result is informed and required by the Tenth Circuit's holding in *In re REDCO*. Although the decision did not address the *Barton* doctrine or its applicability to the facts of the case, the Tenth Circuit clearly held that the bankruptcy court did not have jurisdiction to hear Plaintiffs' claims. This court recognizes an analytical inconsistency if it were to require Plaintiffs

in this case to obtain permission from the bankruptcy court in order to present their action in this court pursuant to the *Barton* doctrine, given the Tenth Circuit's ruling that the bankruptcy court has no jurisdiction to hear a dispute that is virtually indistinguishable in all respects from the present case. The court's reconsidered ruling today squares with this recent Tenth Circuit precedent and resolves that inconsistency.

If further discovery or prayers for relief demonstrate that Plaintiffs do, in fact, seek to affect the bankruptcy estate, the court would entertain a new motion to dismiss on *Barton* doctrine grounds at that time. *See* Fed. R. Civ. P. 12 ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.").

## Conclusion

For the foregoing reasons, the court reconsiders its previous ruling and reverses the dismissal of Plaintiffs' claims against all Defendants pursuant to the *Barton* doctrine.

DATED this 11th day of April, 2017.

BY THE COURT:

Dee Benson
United States District Judge